UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **TIMOTHY FREDERICK**<br><br>Plaintiff,<br><br>vs.<br><br>**ALLOR MANUFACTURING, INC.,**<br><br>Defendant. | **2:20-CV-12790-TGB-RSW**<br><br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 11)** |

This case arises out of an employment dispute between Plaintiff Timothy Frederick and his former employer, Allor Manufacturing, Inc. ("Allor"). Frederick alleges that Allor discriminated against him in violation of federal and state law when Allor refused to allow him to use three weeks of vacation time to "self-quarantine" due to concerns about COVID-19, and instead terminated him for absenteeism. Pending before the court is Allor's motion for summary judgment on all of Frederick's claims. For reasons that follow, Allor's Motion for Summary Judgment (ECF No. 11) will be **GRANTED**.

## I.   BACKGROUND

Plaintiff Timothy Frederick was a long-term employee of Allor, beginning his work there in 1987. Pl's. Dep., ECF No. 16, PageID.241. Over the years, Frederick held a variety of roles, most recently as a

1

"conveyor chain specialist," assembling rollers and chains as part of Allor's industrial conveyor chain manufacturing business. *Id*. at PageID.241, 243. In that role, Frederick was responsible for assembling conveyor parts, packaging them, and shipping them off to customers. *Id*. at PageID.243. Due to the nature of his job, Frederick was required to stand most of the day and regularly lift objects weighing up to 70 lbs. *Id*. at PageID.244.

Frederick has been a smoker for 30 years, consistently smoking a pack of cigarettes a day. He has also had pneumonia twice – once in his 20s and again approximately five years ago. *Id.* at PageID.255. When Frederick was hired at Allor in 1987, he did not report any physical disabilities that would preclude him from performing the responsibilities of his job. Frederick Employment App., ECF. No. 11-4, PageID.119.

Allor employees accrue five paid sick days each year and are allowed a maximum of 5 absences in a rolling 12-month period. Allor Attendance Policy, ECF No.11-7, PageID.126-127. To use vacation time, employees must submit a written request in advance that may be granted or denied at management's discretion. *Id*. Between April 7, 2019 and April 7, 2020, Frederick called off approximately 13 times and left early 8 times. Attendance Cals., ECF No. 11-9, PageID. 147-148. As of April 5, 2020, Frederick had zero sick days and 112 hours of vacation time remaining. Frederick Paychecks, ECF No. 11-8, PageID.144.

On March 10, 2020, due to the outbreak of the novel COVID-19 coronavirus pandemic, the Governor of the State of Michigan declared a state of emergency and issued a Stay at Home Order. Def's. Mot., ECF No. 11, Page ID.70. Subsequently, on March 23, 2020, Allor sent a letter to all their employees informing them they were exempt from the Governor's Executive Order because Allor was deemed an essential business and was permitted to remain open and operating. Mar. 23 Letter, ECF. No. 11-5, PageID.121.

On Friday, April 4, 2020, Frederick called Allor's absence call extension and left a message indicating that, although he did not give any reason for his absence, he would not be coming to work on Monday, April 6. ECF No. 16, PageID.248. On Monday, April 6, Frederick called the absence call extension again and left another voicemail informing Allor that he would not be in to work on Tuesday. *Id.* On Tuesday, April 7, it appears Frederick again called the call-in line and also left a voicemail for Allor's General Manager, Anthony Rossi, in which he indicated he wanted to use his remaining 112 hours of vacation time to cover a "self-quarantine." *Id.* at PageID.249-50. Mr. Rossi did not return Frederick's call. *Id.*

Later that day, Allor's Human Resources Manager, Samantha Kennedy, called Frederick back and explained that if he refused to come into work, Allor would regard him as having resigned from his job. Kennedy Dep., ECF No. 18, PageID.311. Frederick explained to Ms.

Kennedy that he was not resigning, but wanted to use his remaining vacation time to "self-quarantine and follow the Governor's Stay at Home Order." *Id*. at PageID.312; Pl's. Dep., ECF No. 16, PageID.249. During the conversation with Ms. Kennedy, Frederick appears to have made no mention of any disability requiring an accommodation, possible COVID-19 exposure or symptoms, or any need to care for someone else who was positive for COVID-19. Pl's Dep., ECF No. 16, PageID.248. Ms. Kennedy indicated she needed to discuss the issue with others and would call him back. *Id*. at PageID.251. This was the last time Frederick spoke with anyone from Allor. *Id*. at PageID.249.

That same afternoon, Frederick visited his doctor to inform her that he wished to self-quarantine due to his underlying medical conditions – his age, smoking habit, and history of pneumonia. *Id*. at PageID.252. In his conversation with Ms. Kennedy, Frederick had not told her that he had a doctor's appointment scheduled, nor did he tell anyone else at Allor. *Id*. Frederick's doctor provided a note stating it was "recommended that if possible he work from home." Doctor's Note, ECF No. 11-12, PageID.155. On April 8, Frederick texted a copy of this letter to Ms. Kennedy. Text Msg., ECF No. 16, PageID.253.

However, unbeknownst to Frederick, Allor had made the decision to terminate him shortly after his call with Ms. Kennedy.[1] Kennedy Dep., ECF No. 18, PageID.313. On Thursday, April 9, Frederick received a termination notice in the mail which explained that he was being terminated for "excessive absenteeism in accordance with the Allor attendance policy." Pl's. Dep., ECF No.16, PageID.255; Termination Letter, ECF No.11-10, PageID.151.

Frederick subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 9, 2020 alleging he had been discriminated against due to his age and disability. EEOC Charge, ECF No. 11-16, PageID.164. On October 16, 2020, he filed this lawsuit alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 and the Michigan's Persons with Disabilities Civil Rights Act ("PDCRA"). Compl., ECF No. 1, PageID.1. At the conclusion of discovery, Defendant filed a Motion for Summary Judgment on all claims. Def's. Mot., ECF No. 11. The Court held a hearing on his motion on Friday, January 21, 2022. At the hearing, the parties informed the Court that Frederick had been rehired by Allor in November, 2020, about a month

---

[1] It is not entirely clear whether the conversation between Frederick and Kennedy took place on Monday, April 6 (as Frederick suggests, *see* Frederick Dep., ECF No. 16, PageID.251-52), or Tuesday, April 7 (as Kennedy suggests, *see* Kennedy Dep., ECF No. 18, PageID.311; Termination Letter, ECF No.11-10, PageID.151). In any event, it is undisputed that Allor had already decided to fire Frederick by the time he provided the doctor's note.

after he filed suit. Less than a year after returning to work at Allor, Frederick voluntarily left his position there and moved to another state.

## II.   STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v.*

*J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

## III.   ANALYSIS

Frederick alleges that he was terminated from Allor on the basis of a disability. ECF No. 1, PageID.4-5. As a general matter, the PDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's [PDCRA] claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012)(quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002)(abrogated on other grounds)). The parties have not identified any reasons why the Court should treat the claims under these statutes separately, nor has the Court's review uncovered any such grounds. Therefore, the ADA and PDCRA claims will be considered together.

A discriminatory termination under both the ADA and PDCRA can be shown through direct or indirect evidence. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016). Frederick has presented no direct evidence that he was terminated because of his disability and therefore

must establish a prima facie case of discrimination though the indirect framework. The indirect method adapts the familiar *McDonnell Douglas* three-part burden shifting analysis. *Id*.; *see McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-04 (1973). This three-stage analysis is also used to evaluate claims under the PDCRA. *Mazur v. Wal-Mart Stores, Inc.*, 250 F. App'x 120, 124 (6th Cir. 2007).

Establishing a prima facie case for disability discrimination under the indirect method requires a plaintiff to show that (1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Ferrari*, 826 F.3d at 891-92. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate explanation of the action. *Id*. If the defendant does so, the burden shifts back to the plaintiff, who "must introduce evidence showing that the proffered explanation is pretextual." *Id*.

A plaintiff may show pretext by demonstrating that "(1) the employer's stated reasons for terminating the employee have no basis in fact, (2) the reasons offered for terminating the employee were not the actual reasons for the termination, or (3) the reasons offered were

insufficient to explain the employer's actions." *Gunn v. Senior Servs. of N. Kentucky*, 632 F. App'x 839, 844 (6th Cir. 2015).

### A. Prima facie case of discrimination under the ADA

There is no dispute between the parties that Frederick suffered an adverse employment action: termination is a prototypical adverse employment action. *See Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 843 (6th Cir. 2002).  There is also no dispute that Frederick was qualified for the position—he performed the role for more than 30 years and was rehired in November 2020. However, because Frederick has not raised a material dispute of fact that he is disabled and, if he was disabled, that Allor knew about his disability, he has not sufficiently established a prima facie discrimination claim.

### i. Frederick's smoking addiction is not a "disability" under the ADA or PDCRA

The ADA and PDCRA define disability as "a physical impairment or mental impairment that substantially limits one or more major life activities." 42. U.S.C. § 12102(1).; *see Hein v. All Am. Plywood Co.*, 232 F.3d 482, 487 (6th Cir. 2000). "Major life activities include, but are not limited to caring for oneself, performing manual tasks, walking, standing, lifting, bending, and working." 42 U.S.C. § 12102(2).

Frederick asserts that his addiction to smoking is a disability that meets the definition of the ADA and PDCRA. But as the Michigan Court of Appeals has explained, although an addiction to nicotine may cause an

individual discomfort when not smoking, it does not "substantially limit . . . or interfere with major life activities like caring for [one]self, preforming manual tasks, walking, seeing, hearing, speaking, breathing, learning or working." *Stevens v. Inland Waters, Inc.*, 220 Mich. App. 212, 218, 559 N.W.2d 61, 64 (1996).

Frederick admitted that the only limitation his smoking habit creates is the inconvenience of finding time to smoke a cigarette. Pl's. Dep. ECF No. 16, PageID.239-40. Similar to *Stevens*, Frederick's addiction at best "affect[s] his ability to choose not to choose not to smoke and limit[s] his body's ability to be without discomfort when not smoking." *Stevens*, 559 N.W.2d at 64. This does not qualify as a substantial limitation on one of life's major activities.

Finally, as at least one other court has observed, treating smoking as a disability under the ADA would "render somewhere between 25% and 30% of the American public disabled under federal law because they smoke." *Brashear v. Simms*, 138 F. Supp. 2d 693, 695 (D. Md. 2001). Any limitations Frederick experiences on his ability to work due to his smoking habit are no different than those that would be common to a significant portion of the general population. Therefore, Frederick's smoking habit is not a disability under the ADA and PDCRA.

### ii.   Frederick's history of pneumonia is not a "disability" under the ADA or PDCRA

Frederick also claims that his history of pneumonia is a protected disability under the ADA and PDCRA. An impairment cannot substantially limit a major life activity "if it is of a merely temporary nature." *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 408 (Mich. App. 1999); *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996)("Generally, short-term, temporary restrictions are not substantially limiting.")

The term disability under the ADA and PDCRA "connotes some sense of permanency and when an impairment, [like pneumonia], is temporary and relatively easily remedied [the] ailment is not a substantial limitation on any major life activity." *Chiles*, 606 N.W.2d. at 482. A disability does not include temporary impairments that require an extended leave from work. *Donahoo v. Master Data Centre*, 282 F. Supp. 2d 540, 550 (E.D. Mich. 2003)(citing *Chiles* 606 N.W.2d at 408). Therefore, because "pneumonia is a temporary condition," it is not a disability under the ADA or PDCRA. *See, e.g., Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002).

Although Frederick has experienced two bouts of pneumonia, he admitted that he suffers no permanent limitations as a result. Pl's. Dep., ECF No. 16, PageID.255. Therefore, because Frederick's cases of pneumonia were temporary in nature, and he has not experienced any limitations or long-term continuing effects caused by the illness, he does

not qualify as disabled under the ADA or PDCRA as a result of his pneumonia.

### iii. Frederick failed to show that he suffers from a heightened risk of severe COVID-19 infection that might constitute a disability

In light of the COVID-19 pandemic, some courts have adopted a "totality of the circumstances" approach when applying the ADA. *See, e.g.*, *Silver v. City of Alexandria*, 470 F. Supp. 3d 616, 622 (W.D. La. 2020). This approach considers the totality of an individual's "health circumstances in conjunction with their social circumstances." *Id*. Under that approach, Frederick's health circumstances must be considered in the context of the COVID-19 pandemic. *Id*.

In *Silver v. City of Alexandria*, a district court concluded that a plaintiff's inoperable aortic valve disease, systolic heart failure and permanent pacemaker made him more susceptible to contracting COVID-19 due to the substantial limits those conditions placed on his cardiovascular system. *Id*. at 618. In contrast, Frederick admits that his smoking addiction poses no limitations or adverse effect on his health. At best, his smoking habit creates a daily inconvenience of making time to smoke. Pl's. Dep., ECF No. 16, PageID.239. Additionally, Frederick indicated that his bouts with pneumonia have not left him with any day-to-day limitations. Pl's. Dep., ECF No. 16, PageID.255. Frederick has not established that either his smoking or pneumonia history, or those two

health conditions in conjunction, place him at a higher risk of developing a severe COVID-19 infection—for example, Frederick did not present evidence that these conditions led to respiratory difficulties or contributed to severe illness as a result of other respiratory viruses. It is clear that Frederick's conditions do not pose the same adverse health effects and risk of severe illness as a result of COVID-19 presented in *Silver*.

Therefore, although susceptibility to severe illness as a result of COVID-19 may constitute a disability in some factual scenarios, Frederick has not provided any evidence to support a claim that his history makes him particularly susceptible to COVID-19.

### iv. Assuming for the sake of argument that Frederick is disabled, Allor was never on notice of a disability

Even if the Court were to accept for the sake of argument that Frederick's health conditions created a disability, to establish a prima facie case, Frederick must show that Allor knew or should have known of this disability. An employer has notice of an employee's disability when an employee tells their employer of their disability. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). Additionally, an employer "is not required to speculate as to the extent of the employee's disability[.]" *Id.* at 450 (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1988)).

Following the Stay at Home order issued by the Governor of Michigan, Frederick told Ms. Kennedy that he planned to use his remaining vacation time to 'self-quarantine." Pl's. Dep., ECF No. 16, PageID.249. He did not indicate to Ms. Kennedy that he was concerned about his susceptibility to COVID-19 due to his smoking habit or history of pneumonia. *Id*. Additionally, the voicemail Frederick left for Mr. Rossi indicated he wanted to use his vacation time to "self-quarantine" and made no mention of a disability or susceptibility to contracting COVID-19. *Id*.

When Ms. Kennedy informed Frederick that Allor would consider Frederick's taking time off for a self-quarantine to be a resignation, Frederick again made no mention of his smoking or history of pneumonia as reasons for his need to take time off work. *Id*. Instead, Frederick stated that both the President and Governor of Michigan indicated that a 'self-quarantine' was the best way to prevent the *spread* of COVID-19 among the general population. *Id*. He also made no mention of any possible COVID-19 exposure or need to care for someone who had tested positive for COVID-19. *Id*.

Additionally, although Ms. Kennedy indicated she had seen Frederick smoking, she testified that she was not aware of the extent of his habit or any limitations he suffered because of it. Kennedy Dep., ECF No.18, PageID.310. Ms. Kennedy also never received any request from

Frederick for an accommodation based on smoking or history of pneumonia. *Id*.

Finally, when Frederick was hired by Allor in 1987, he failed to indicate on his application that he was disabled as a result of his smoking habit or history of pneumonia. Def's. Ex. 4, ECF No. 11-4, PageID.118. In sum, Frederick has not presented evidence showing that Allor was ever provided with any notice of Frederick's disability—he never made any mention of his smoking habit, history of pneumonia or susceptibility to contracting COVID-19 to anyone at Allor. The only reason Frederick provided for wanting to use his vacation time was to "self-quarantine" because "the President and Governor [were] telling us the best way to stop the spread of COVID-19 [was] to self-quarantine." Pl's. Dep., ECF No. 16, PageID.249.

Frederick's smoking habit and history of pneumonia do not qualify as disabilities under either the ADA or PDCRA. However, even if Frederick could establish that these conditions amounted to a disability as prescribed under the ADA or PDCRA, Frederick never told Allor about them, nor that they caused any heightened susceptibility to COVID-19. Allor was thus never aware of Frederick's alleged disability. For these reasons, Frederick cannot establish a prima facie case of disability discrimination under the ADA or PDCRA.

**B. Allor's reasons for termination were not pretextual.**

The analysis could end here, because Frederick is unable to set out a prima facie case of disability discrimination. But even if he had been able to do so, Allor has shown that it terminated Frederick for legitimate, non-discriminatory reasons. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory purpose for its actions. If successful, the burden shifts back to the employee to show that the employer's reasons for its actions were pretextual. *Ferrari*, 826 F.3d at 892.

To prove that an employer's reasons for termination were pretextual, a plaintiff must establish that the justification (1) has no basis in fact; (2) did not actually motivate plaintiff's termination; or (3) was insufficient to warrant plaintiff's termination. *Gunn v. Senior Servs. of N. Kentucky,* 632 F. App'x 839, 844 (6th Cir. 2015); *see also Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007). "To demonstrate pretext, a plaintiff must show *both* that the employer's proffered reason was not the real reason for its action, *and* that the employer's real reason was unlawful." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015)(emphasis in original).

> **i.   Allor had sufficient grounds to terminate Frederick under its attendance policy.**

Allor has set forth facts to show that the termination of Frederick was based on a legitimate, non-discriminatory attendance issue and

refusal to work. Allor's attendance policy states that employees are provided with 5 paid sick days per calendar year and are allowed no more than 5 absences in a rolling 12-month period. Attendance Policy, ECF No. 11-7, PageID.126-27, To use vacation time, a written request must be submitted to management and may be granted or denied at management's discretion, and any violation of the attendance policy may result in discharge. *Id*.

When Frederick called off work on April 6 and 7, 2020, he had no sick time remaining and failed to submit a proper written vacation request for management's approval. Attendance Cals., ECF No. 11-8, PageID.144; Rossi Dep., ECF No, 17, PageID.301. Additionally, between April 7, 2019 and April 7, 2020, Frederick had called off approximately 13 times and left early 8 times. Attendance Cals., ECF No. 11-8, PageID.147-148. Finally, Allor's General Manager Anthony Rossi testified that Frederick also had attendance issues as early as 2017, in the first year of Mr. Rossi's employment at Allor, and continued to have attendance issues until the time of his termination. Rossi Dep., ECF No. 17, PageID.300.

Although Allor's termination of Frederick may have been somewhat abrupt, particularly in light of the company's decision to rehire him some six months later, the relevant question is not whether Allor exercised wise judgment in the Court's hindsight, but rather whether Allor's reasons for terminating Frederick were based on impermissible grounds.

*See Clay v. Hyatt Regency Hotel*, 724 F.2d 721, 725 (8th Cir. 1984). Attendance problems and refusal to work are legitimate, non-discriminatory reasons to discipline or terminate an employee. *Salazar v. Tribar Manufacturing, L.L.C.*, No, 14-12935, 2016 WL 795905, at *10 (E.D. Mich. Mar. 1, 2016)(Berg, J.). Here, Frederick's history of poor attendance and his refusal to return to work, coupled with the company's attendance policy, provided Allor with a legitimate, non-discriminatory justification for termination.

### ii. Allor employees used for comparison were not similarly situated.

To prove Allor's justifications were pretextual, Frederick seeks to show that similarly situated employees did not suffer the same adverse action despite also taking time off because of COVID-19. To show pretext by comparison to similarly situated employees, a plaintiff must demonstrate that other employees "were not fired, even though they engaged in substantially identical conduct to that which the employer contends motivated his decision." *Gunn*, 632 F. App'x at 848 (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000)). To be similarly situated, "individuals . . . must have dealt with the same supervisor, have been subject to the same standards and have engaged in conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344,

352 (6th Cir. 1998)). Although an "exact correlation" is not required, the plaintiff and employees must be "similar in all relevant aspects." *Id.* (quoting *Smith*, 220 F.3d at 762).

Frederick points to other Allor employees who were permitted to take time off work to self-quarantine, but the three employees Frederick uses for comparison were not similarly situated. Pl's. Dep., ECF No. 16, PageID.256. First, neither of the employees Frederick referenced had attendance issues in April 2020. Kennedy Decl., ECF No. 14-1, PageID.229. Second, two individuals who were granted vacation time did not request three weeks off, used the proper request process and received approval from management. *Id.* In March 2020, a third employee whose wife was experiencing COVID-19 symptoms was granted time off to quarantine per CDC guidelines and his physician. *Id.* However, because he did not experience any symptoms, he was permitted to return to work but voluntarily terminated his employment shortly thereafter. *Id.* at PageID.229-230.

Allor also points to a fourth employee for comparison. This individual was similarly situated and faced the same adverse action. Like Frederick, this employee refused to return to work without proof of a COVID-19 exposure. *Id.* He was terminated for his refusal to return to work on the same day Frederick was. *Id.* Therefore, Frederick has not raised a material dispute of fact that Allor's justification for termination

was legitimate and non-discriminatory, and Frederick's justification for pretext fails.

### C. Frederick's retaliation claim fails.

Frederick filed an EEOC Charge of Discrimination on July 9, 2020 and on August 26, 2020, he received a "right to sue" in letter in response. EEOC Charge, ECF No. 11-16, PageID.164; Compl., ECF No. 1, PageID.4. When Frederick completed the EEOC form, he failed to check the "retaliation" box. EEOC Charge, ECF No. 11-16, PageID.164. However, EEOC complaints are to be "construed liberally," and courts may "consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). Therefore, where, as here, "facts . . . would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id*. (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).

In support of his retaliation claim, Frederick alleges he "submitted a doctor's note indicating [he] needed a reasonable accommodation due to [his] medical history," and was terminated two days later. EEOC Charge, ECF 11-16, PageID.164. Frederick contends he engaged in protected activity and was subsequently fired. This argument fails, however, because Frederick did not submit his doctor's note or raise any issues regarding a disability until *after* Allor had already made the

decision to fire him. Although Ms. Kennedy had seen Frederick smoking, she did not know of the "extent of how often" he smoked or about his history with pneumonia. Kennedy Dep., ECF No. 18, PageID.310. Similarly, Mr. Rossi had seen Frederick smoking, but was also unaware of the extent of his habit or his history with pneumonia. Rossi Dep., ECF No. 17, PageID.300.

Consequently, Allor was unaware Frederick had a possible disability stemming from his smoking habit and history with pneumonia until after his termination had been decided. While the note from Frederick's doctor could have provided notice of either a possible disability, or at least that Frederick sought an accommodation for a purported disability, that notice came too late—after the decision to terminate Frederick had already been made. Therefore, Frederick's termination was not an act of retaliation in response to his request for an accommodation.

## CONCLUSION

For all the reasons set forth above, Defendant Allor's Motion for Summary Judgment (ECF No. 11) is **GRANTED**.


**SO ORDERED**, this 28th day of February, 2022.

BY THE COURT:
s/Terrence G. Berg_____
TERRENCE G. BERG
United States District Court Judge